IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH, LONDONBURY HOMES, INC., SPARKLE CONSTRUCTION-SPP, INC., MAGNOTTI & SONS, INC. DBA THE FIREPLACE AND PATIOPLACE, TJ BUSH ENTERPRISES, INC., AND ROSSMAN/HENSLEY, INC., : : : : : : : : : | NO. 2:20-cv-870 |
| Plaintiffs, : v. : : TOM WOLF, GOVERNOR AND RACHEL LEVINE, SECRETARY OF PENNSYLVANIA DEPARTMENT OF HEALTH, : : : : : Defendants. | **COMPLAINT IN CIVIL ACTION SEEKING A DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT IN CIVIL ACTION SEEKING A DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

AND NOW, come the Plaintiffs, BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH, LONDONBURY HOMES, INC., SPARKLE CONSTRUCTION-SPP, INC., MAGNOTTI & SONS, INC. DBA THE FIREPLACE AND PATIOPLACE, TJ BUSH ENTERPRISES, INC., AND ROSSMAN/HENSLEY, INC., collectively "Plaintiffs") by and through its attorneys, Gesk Moritz, LLC, and files this COMPLAINT IN CIVIL ACTION SEEKING A DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF against Defendants, TOM WOLF, GOVERNOR AND RACHEL LEVINE, SECRETARY OF PENNSYLVANIA DEPARTMENT OF HEALTH, as follows:

### PARTIES

1. Plaintiff, Builders Association of Metropolitan Pittsburgh ("BAMP'), is a Pennsylvania non-profit trade association with a principal place of business at 2041 Boulevard of the Allies, Pittsburgh, Pennsylvania 15219.

2. As an organization, BAMP is comprised of homebuilders, light commercial builders, suppliers, subcontractors, lenders, manufacturers, utilities, realtors, and architects.

3. BAMP currently has more than 600 members in Allegheny, Beaver, Butler, Greene, Washington, and Westmoreland counties of Pennsylvania.

4. BAMP brings the instant Amended Petition in a representative capacity, on behalf of its members.

5. Plaintiff Londonbury Homes, Inc. ("Londonbury") is a Pennsylvania corporation with a principal place of business located at 432 Jane Street, Carnegie, Pennsylvania 15105.

6. Londonbury is engaged in the business of residential construction.

7. Plaintiff Sparkle Construction-SPP, Inc. ("Sparkle"), is a Pennsylvania corporation with a principal place of business located at 117 Crestwood Drive, Apollo, Pennsylvania 15613.

8. Sparkle is engaged in the business of residential construction.

9. Plaintiff Magnotti & Son, Inc., DBA The Fireplace and Patioplace ("Magnotti"), is a Pennsylvania corporation with a principal place of business located at 1651 McFarland Road, Pittsburgh, PA 15216.

10. In connection with the business of residential construction, Magnotti supplies and installs fireplaces.

11. Plaintiff TJ Bush Enterprises, Inc. ("TJ Bush") is a Pennsylvania corporation with a principal place of business located at 919 Ridge Road, Bridgeville, PA 15017.

12. TJ Bush is engaged in the business of residential construction.

13. Plaintiff Rossman/Hensley, Inc. ("Rossman Hensley") is a Pennsylvania corporation with a principal place of business located at 1426 Pittsburgh Road, Valencia, PA 16059.

14. Rossman Hensley is engaged in the business of residential construction.

15. Respondent Tom Wolf ("Governor") is the Governor of the Commonwealth of Pennsylvania with a principal office address at 508 Main Capitol Building, Harrisburg, Pennsylvania 17120.

16. Respondent Rachel Levine ("Secretary") is the Secretary of Health for the Commonwealth of Pennsylvania with a principal office at Health and Welfare Building, 8th Floor West, 625 Forster Street, Harrisburg, Pennsylvania 17120.

## JURISDICTION

17. This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331, 1343(a)(3)(4), which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

18. Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiffs' claim occurred in this district.

## FACTS

19. On Thursday, March 19, 2020, the Governor issued an order compelling the closure of the physical operations of all businesses that were deemed non-life sustaining, and on the same day, the Secretary issued a similar order (collectively "Orders"). The Orders are attached as Exhibits A and B, respectively.

20. Further, the Governor determined which Pennsylvania businesses are "life sustaining" and which are "non-life sustaining" ("the List"). The List is attached as Exhibit C.

21.   The Orders cite the following legal authority: (1) The Emergency Management Services Code ("EMSC"), 35 Pa.C.S. § 7101, *et seq.*; (2) Sections 532(a) and 1404(a) of the Administrative Code; and (3) the Disease Prevention and Control Law ("DPCL"), 35 P.S. § 521.1, *et seq.*

22.   While physical construction activities have been permitted to resume across the Commonwealth, operations are still limited and/or constrained by restrictions set forth as modifications to the Orders.

23.   The Governor and Secretary have divided the Commonwealth into six (6) regions for the purpose of analyzing the spread of coronavirus.

24.   BAMP's membership is comprised of businesses and individuals from Allegheny, Beaver, Butler, Greene, Westmoreland, and Washington counties.

25.   All such counties are within the Southwest region defined by the Governor and Secretary.

26.   Other than Beaver County, the Governor has announced that the Southwest Region is being moved to the "Yellow" phase of reopening on May 18, 2020.

27.   Based on the information currently available, the "Yellow Phase" does not alter the Order and Guidance for the Construction Industry restricting workers on residential construction sites.

28.   Based on the information currently available, the "Green Phase" does not alter the Order and Guidance for the Construction Industry restricting workers on residential construction sites.

29.   Some BAMP member suppliers, manufacturers, and trade contractors, Londonbury and Sparkle were ordered to remain closed under the Governor's and Health

4

Secretary's orders which is disrupting the supply chain and construction operations for residential construction.

30. Plaintiffs have suffered, and will continue to suffer, economic harm as a result of the Orders.

## THE ORDERS LACK THE REQUIRED DUE PROCESS

31. Plaintiffs are entitled to due process under the Fourteenth Amendment to the U.S. Constitution.

32. Due process forbids the state to deprive individuals of life, liberty, or property without due process of law.

33. Due process is required even in times of emergency.

34. In conjunction with the Orders, the Governor established a waiver process administered by the Department of Community of Economic Development ("DCED") by which a business deemed "non-life sustaining" could advocate for an exemption to permit it to open.

35. In determining which businesses were "Life Sustaining" DCED announced it would use an advisory issued by the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency entitled "Identifying Critical Infrastructure During COVID-19" ("CSIA Advisory").

36. On March 28, 2020 the CSIA Advisory was amended to designate construction of single-family and multifamily housing as an "Essential Infrastructure Business" (Version 2.0) Under both the "Public Works and Infrastructure Support Services" and "Residential/Facilities and Services" section of the guidance. The CSIA Advisory Version 2.0 is attached as Exhibit D.

37. In subsequent communications to the business community, DCED announced that "[i]n analyzing requests for exemptions, DCED utilized CISA Advisory Version 1.1, originally issued on March 19, 2020, as amended on March 23, 2020. Version 1.1 of the CISA advisory is available here…Subsequent changes to the CISA guidance were not adopted by the commonwealth and were not applied when analyzing requests for exemption."

38. The Governor closed waiver requests on April 3, 2020.

39. Reportedly, over 40,000 waiver requests were received by the Commonwealth.

40. Sparkle, TJ Bush, and other BAMP members applied for waivers before April 3, 2020.

41. In response to its waiver requests, Plaintiff TJ Bush received two emails denying its requests without explanation.

42. In response to the waiver requests, the Governor and Secretary provided a form "Clarification for Residential Construction" ("Clarification"). This Clarification is attached as Exhibit E.

43. The clarification was provided to Sparkle, and also based upon information and belief, an identical Clarification was provided in response to all waivers sought by other BAMP members.

44. The Clarification restates the Governor's previously provided guidance concerning permissible emergency repairs and work on projects that have already been issued a final occupancy permit.

45. Importantly, the Clarification further states that no new construction or non-emergency rehabilitation or remodeling may be performed.

6

46. The Clarification further provides, *inter alia,* "[i]f you previously received a notification from ra-dcexemption@pa.gov informing you that your request for an exemption was denied, granted, or that no exemption was required, please note that this notification replaces that previous guidance."

47. By issuing the identical form Clarification to every residential contractor waiver request, the Commonwealth fails to consider the specific circumstances of the requesting party. The Commonwealth further fails to consider the mitigation proposal of each requesting party.

48. Effectively, there is no waiver process for residential contractors and associated member businesses.

49. This standardized approach and failure to consider the applicant's unique situation and proposal constitutes a denial of the applicant's due process rights under the United States Constitution.

**THE LIST AND GUIDELINES VIOLATE PLAINTIFF'S RIGHTS UNDER THE U.S. CONSTITUTION**

50. The equal protection clause of the Fourteenth Amendment of the U.S. Constitution provides that no State shall deny any person within its jurisdiction the equal protection of laws.

51. As of May 1, 2020, all businesses in the construction industry are permitted to maintain in-person operations so long as their activities strictly adhere to the "Guidance for Businesses in the Construction Industry Permitted to Operate During the COVID-19 Disaster Emergency" ("the Guidance"). The Guidance is attached as Exhibit F.

52. The Guidance provides definitions as to which projects constitute residential and commercial construction.

53. The Guidance provides that residential construction projects may not permit more than four persons on the jobsite at any time inclusive of employees of both prime and subcontractors.

54. Further, the Guidance states that commercial construction projects may not permit more than four persons on job sites of 2,000 square feet or less. One additional person is allowed for each additional 500 square feet of enclosed area over 2,000 square feet.

55. Following this issuance of the Guidance, the Commonwealth published a "Construction Guidance During COVID-19 FAQs" ("FAQ"). The FAQ is attached as Exhibit G.

56. The FAQ applies to both residential and commercial contractors but sets forth different guidelines for each.

57. The FAQ clarifies that the worker limits do not apply to exterior work and that after erection of a dividing fire separation wall, the worker limit applies to each unit.

58. Further, the FAQ provides:

> If a residential construction project is over 2,000 square feet, can the same non-residential guidelines apply?
>
> No. Residential projects must follow the residential guidelines, which state no more than four persons on the job site at the same time.

59. Residential and commercial contractors are similar businesses engaged in the same type of work.

60. A commercial contractor and a residential contractor working on a project of the same size have the same ability to implement social distance between persons working on the job site.

8

61. Stated otherwise, there is nothing specific to residential construction, as opposed to commercial construction, that makes it more difficult to implement social distancing between persons on a job site.

62. Under the Guidance, a commercial contractor building a 5,000 square foot structure would be permitted to have ten persons on the job site, while a residential contractor building a 5,000 square foot house would be permitted to have only four persons on the job site.

63. Other than the number of workers permitted to work in an enclosed unit, the guidance for safely working at a construction site are identical for all construction related activities, including following Centers for Disease Control and Prevention (CDC) and Occupational Safety and Health Administration (OSHA) guidelines. The OSHA Guidelines are attached as Exhibit H.

64. Guidance by the CDC and OSHA do not differentiate between residential and commercial construction; determining they both fall within the same class of construction related activity.

65. Some BAMP members work in both types of construction, residential and commercial, requiring them to operate under separate working conditions regarding staffing while being required to conduct their operations under the same safety and disease containment protocols.

66. The Governor's Orders and Guidance treat similarly situated entities differently.

67. The Orders and Guidance related to the number of workers permitted to work within an enclosed unit violate the equal protection clause of the United States Constitution.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor, against Defendants jointly and severally, and seek relief as follows:

(1)   a Declaratory Judgment that issuance and enforcement of the Orders are unconstitutional for the reasons stated herein, and that the actions of the Defendants are unlawful and unconstitutional;

(2) a permanent injunction to prohibit Defendants from enforcing the Orders in the manner and fashion engaged by Defendants;

(3) a declaration that the rights of the Plaintiffs have been violated by the various actions of the Defendants and the said Defendants are enjoined from engaging in such violations and declaring them to be null and void ab initio;

(4) award of costs and expenses, including reasonable attorneys' fees under 42 U.S.C.§ 1983 and 1988; and,

(5) such other relief as this Court deems appropriate.


JURY TRIAL DEMANDED



Date: June 12, 2020                                     Respectfully submitted,


                                                        */s/ Kristen L. Moritz*
                                                        Kristen L. Moritz
                                                        Pa. I.D.  No. 205800
                                                        Gesk Moritz LLC
                                                        14 East Main Street
                                                        Carnegie, PA 15106
                                                        kmoritz@gesklaw.com
                                                        (412) 429-9100
                                                        (412) 774-2110 (fax)