## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH, LONDONBURY HOMES, INC., SPARKLE CONSTRUCTION-SSP, INC., MAGNOTTI & SONS, INC., d/b/a THE FIREPLACE AND PATIOPLACE, TJ BUSH ENTERPRISES, INC., and ROSSMAN/HENSLEY, INC.,** <br> Plaintiffs <br><br> v. <br><br> **TOM WOLF, Governor of the Commonwealth of Pennsylvania, and RACHEL LEVINE, Secretary of Pennsylvania Department of Health,** <br><br> Defendants | **No. 2:20-CV-0870** <br><br> *Complaint Filed 6/12/20* |

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Respectfully submitted,

**JOSH SHAPIRO**
**Attorney General**

BY:  **KAREN M. ROMANO**
**Chief Deputy Attorney General**
**Chief, Civil Litigation Section**
**PA Bar #88848**

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 787-2717**
**kromano@attorneygeneral.gov**

**DATE:  July 14, 2020**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.................................... 3

QUESTIONS PRESENTED....................................................................................... 4

ARGUMENT ............................................................................................................ 4

    I.    Plaintiffs' Claims Must Be Dismissed Because Identical Claims Are Pending Between the Identical Parties in Another Court ..................................... 5

    II.    Plaintiffs Cannot Prove That There Is an "Actual Controversy" Warranting Declaratory or Injunctive Relief Because They Seek Relief as to Past Events ...... 6

    III.    The Governor's Orders Were a Proper Exercise of the Commonwealth's Police Power ........................................................................................ 8

    IV.    Plaintiffs' Procedural Due Process Claims Must be Dismissed Because the COVID-19 Emergency Required the State to Act Quickly and the Waiver Process Provides Adequate Post-Deprivation Process........................................ 11

    V.    Plaintiffs Cannot Establish an Equal Protection Violation Because They Are Not Similarly Situated to Commercial Construction Contractors and All Residential Construction Contractors Were Treated the Same................................. 13

        A.    As residential construction contractors, Plaintiffs are not similarly situated to commercial construction contractors........................................... 13

        B.    Plaintiffs' equal protection claim is moot because all counties are in the "green" phase in which the same number of workers are permitted on all construction sites ......................................................................... 15

CONCLUSION........................................................................................................ 16

CERTIFICATE OF SERVICE ................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Alvin v. Suzuki*,
    227 F.3d 107 (3d Cir. 2000) .................................................................................. 13

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011) ....................................................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 4

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ............................................................... 4

*Benner v. Wolf,* No. 1:20-cv-775, 2020 WL 2564920 (M.D. Pa., May 21, 2020) ................ 10, 11

*Chrysler Credit Corp. v. Marino,* 63 F.3d 574  (7th Cir. 1995) ....................................... 5

*City of Dallas v. Stanglin*, 490 U.S. 19 (1989) ................................................................ 14

*Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800 (1976) .............................. 5

*Corliss v. O'Brien*, 200 F. App'x 80 (3d Cir. 2006) ........................................................... 7

*County of Butler v. Wolf,* No. 2:20-cv-677, 2020 WL 2769105 (W.D. Pa., May 28, 2020) .......... 6

*Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114 (3d Cir. 2013) .............. 5

*DelRio–Mocci v. Connolly Prop. Inc.,* 672 F.3d 241 (3d Cir. 2012) ................................................. 4

*District of Columbia v. Brooke*, 214 U.S. 138 (1909) .................................................... 8

*Ethypharm S.A. France v. Abbott Laboratories,* 707 F.3d 223 (3d Cir. 2013) ............................. 5

*Friends of Danny DeVito v. Wolf*, 227 A.3d. 872 (Pa. April 13, 2020) ................................ passim

*Gilbert v. Homar,*
    520 U.S. 924 (1997) ........................................................................................... 11

*Hillsborough Cty. v. Automated Med. Laboratories, Inc.*,
    471 U.S 707 (1985) ............................................................................................. 8

*Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*,
    452 U.S. 264 (1981) ............................................................................................. 12

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905) .................................................................. 9, 10

*Johnson v. United States*,
    559 U.S. 133 (2010) ............................................................................................. 8

*Just Enterprises, Inc. v. O'Malley & Langan, P.C.,* 560 F.Supp.2d 345 (M.D. Pa., 2008) ........... 5

*Lawton v. Steele,*
    152 U.S. 133 (1894) ................................................................................................. 10

*Morrissey v. Brewer,*
    408 U.S. 471 (1972) ................................................................................................. 11

*Remington Rand Corp. v. Business Systems, Inc.,* 850 F.2d 1274 (3d Cir. 1987) ..................... 5, 6

*Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643 (3d Cir. 1990) ........................................ 7

*Washington State Department of Licensing v. Cougar Den, Inc.,*
    139 S.Ct. 1000 (2019) ................................................................................................. 8

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ............................................................................. 15

*Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483 (1955) ..................................... 13, 15

## Statutes

35 Pa.C.S. § 7101 .......................................................................................................................... 1

## Other Authorities

"Cases in the U.S.," Centers for Disease Control and Prevention,
    https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-
    us.html?fbclid=IwAR2YGdSiJ1zk6mktakCLsCqjU-
    tEq9XsvLMK2fGG0vmHPIsAdMgl8C13cOU ....................................................... 1

"COVID-19 Data for Pennsylvania," Pa. Dept. of Health,
    https://www.health.pa.gov/topics/disease/coronavirus/Pages/Coronavirus.aspx ...................... 3

"Process to Reopen Pennsylvania," Website of the Governor of Pennsylvania,
    https://www.governor.pa.gov/process-to-reopen-pennsylvania/ ................................................. 3

"Responding to COVID-19 in Pennsylvania," Commonwealth of Pennsylvania Website,
    https://www.pa.gov/guides/responding-to-covid-19/#PhasedReopening (last visited 5/2/20) .. 2

COVID-19 Data for Pennsylvania," Pa. Dept. of Health,
    https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx ................................ 1

Guidance for Businesses in the Construction Industry Permitted to Operate During the COVID-
    19 Disaster Emergency, Website of the Governor, https://www.governor.pa.gov/covid-
    19/construction-industry-guidance/ .................................................................................. 9, 20

"State Data and Policy Actions to Address Coronavirus," Kaiser Family Foundation,
    https://www.kff.org/health-costs/issue-brief/state-data-and-policy-actions-to-address-
    coronavirus/ (last visited 5/1/20) ................................................................................... 13

Thomas Wm. Mayo, Wendi Campbell Rogaliner, and Elicia Grilley Green, "'To Shield Thee From Diseases of the World': The Past, Present, and Possible Future of Immunization Policy," 13 J. Health & Life Sci. L. 3, 14 (Feb. 2020).............................................................. 11

Thomas Wm. Mayo, Wendi Campbell Rogaliner, and Elicia Grilley Green, "'To Shield Thee From Diseases of the World': The Past, Present, and Possible Future of Immunization Policy," 13 J. Health & Life Sci. L. 3, 9 (Feb. 2020)............................................................... 12

Website of the Governor of Pennsylvania, https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf............................... 1

Website of the Governor of Pennsylvania, https://www.governor.pa.gov/wp-content/uploads/2020/06/20200603-TWW-amendment-to-COVID-disaster-emergency-proclamation.pdf ................................................................................................................... 3

**Constitutional Provisions**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 5, 6

**Constitutional Provisions**

U.S. Const. Amend. X ............................................................................................................... 11

**INTRODUCTION**

In bringing this suit to enjoin the actions of the Governor and Secretary, Plaintiffs have not presented any novel legal issues for the Court's consideration.   In fact, Plaintiffs raise claims identical to those they already have pending before the Commonwealth Court.   What's more, they seek declaratory and injunctive relief where there is no live case or controversy between the parties.   All of Plaintiffs' claims either fail as a matter of law or have been mooted as a result of the Commonwealth's reopening, requiring dismissal of all claims.

What began as two presumptive positive cases of COVID-19 in Pennsylvania on March 6, 2020, has grown to 96,671 cases and 850,612 deaths in just under four months.[1] Throughout the United States, there are nearly three million confirmed cases of COVID-19, and more than 134,000 people have died from this pandemic so far.[2]

On March 6, 2020, Governor Wolf signed a Proclamation of Disaster Emergency pursuant to the Emergency Management Services Code (Emergency Code), 35 Pa.C.S. § 7101 *et seq.*[3] This emergency proclamation allowed the Governor to issue executive orders "to protect the citizens of the Commonwealth from sickness and death[.]"   On March 19, 2020, the Governor entered an Executive Order directing all non-life-sustaining businesses in Pennsylvania to temporarily close their physical locations so that those businesses would not serve as centers

---

[1]   "COVID-19 Data for Pennsylvania," Pa. Dept. of Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx (last visited 7/14/20).

[2]   "Cases in the U.S.," Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html?fbclid=IwAR2YGdSiJ1zk6mktakCLsCqjU-tEq9XsvLMK2fGG0vmHPIsAdMgl8C13cOU (last visited 7/14/20)

[3]   Website of the Governor of Pennsylvania, https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf

1

for contagion.  *Doc. 1-1.*   The Secretary of Health issued a similar order.[4]   (Collectively "Business Closure Orders").

The Supreme Court of Pennsylvania unanimously agreed that the Governor, under Pennsylvania law, had the authority to enter the Executive Order, that the Order was a lawful exercise of Pennsylvania's police powers, and that the Order does not violate state or federal constitutional rights. *Friends of Danny DeVito v. Wolf*, 227 A.3d. 872 (Pa. April 13, 2020).  The Commonwealth's response slowed the spread of the virus and reduced the death toll in Pennsylvania.

The Commonwealth is in the process of a phased reopening with all 67 counties now in the "green" phase.[5]  This carefully structured reopening, crafted in partnership with Carnegie Mellon University and using the Federal government's Opening Up America Guidelines, is data-driven and reliant upon quantifiable criteria for a targeted, evidence-based, regional approach.[6]  However, while the actions of the Governor and the Secretary have ameliorated the exponential rise of COVID-19 cases in Pennsylvania, the pandemic continues to infect hundreds of Pennsylvanians every day.[7]  Indeed, case counts have been on the rise in several Southwestern

---

[4]     Order of the Secretary of the Pennsylvania Department of Health Regarding the Closure of All Businesses that are Not Life Sustaining, Website of the Department of Health, https://www.governor.pa.gov/wp-content/uploads/2020/03/20200319-Order-of-Secetary-of-PA-DOH-Closure-of-All-Businesses-That-Are-Not-Life-Sustaining.pdf

[5]     "Responding to COVID-19 in Pennsylvania," Commonwealth of Pennsylvania Website, https://www.pa.gov/guides/responding-to-covid-19/#PhasedReopening (last visited 5/27/20).

[6]     "Process to Reopen Pennsylvania," Website of the Governor of Pennsylvania, https://www.governor.pa.gov/process-to-reopen-pennsylvania/ (last visited 5/27/20).

Pennsylvania counties.  Because the COVID-19 disaster has not yet ended, on June 3, 2020, the Governor renewed the Proclamation of Disaster Emergency.[8]

Despite this, Plaintiffs ask this Court to declare that the Business Closure Orders are unconstitutional and enjoin their enforcement.   This invitation to endanger the lives of Pennsylvanians should be declined.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

On May 13, 2020, Builders Association of Metropolitan Pittsburgh commenced an action in the Commonwealth Court alleging the Business Closure Orders violated its procedural due process and equal protection rights.  On June 2, 2020, an Amended Petition was filed to add Petitioners Londonbury Homes, Inc., Sparkle Construction-SPP, Inc., Magnotti & Sons, Inc. DBA the Fireplace and Patioplace, T.J. Bush Enterprises, Inc., and Rossman/Hensley, Inc.  Once again, the Petition claimed violations of procedural due process and equal protection.  Petitioners sought to expedite the Commonwealth Court action, but the request was denied.  The Governor and Secretary filed preliminary objections which remain pending.

On June 12, 2020, the instant action was commenced.   Defendants now file a Motion to Dismiss and this brief is submitted in support thereof.

---

[7]     "COVID-19 Data for Pennsylvania," Pa. Dept. of Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Coronavirus.aspx (last visited 7/120).

[8]     Website of the Governor of Pennsylvania, https://www.governor.pa.gov/wp-content/uploads/2020/06/20200603-TWW-amendment-to-COVID-disaster-emergency-proclamation.pdf (last visited 6/14/20).

## QUESTIONS PRESENTED

I.    MUST PLAINTIFFS' COMPLAINT BE DISMISSED BECAUSE THE IDENTICAL CLAIMS, BETWEEN THE SAME PARTIES, ARE PENDING IN COMMONWEALTH COURT?

*Suggested Answer:  Yes*

II.    MUST PLAINTIFFS' REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF BE DENIED WHERE THERE IS NO ACTUAL CONTROVERSY BETWEEN THE PARTIES BECAUSE PLAINTIFFS SEEK RELIEF AS TO PAST EVENTS?

*Suggested Answer:  Yes*

III.    WERE THE BUSINESS CLOSURE ORDERS A PROPER EXERCISE OF THE COMMONWEALTH'S POLICE POWER?

*Suggested Answer:  Yes*

IV.    MUST PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIMS BE DISMISSED BECAUSE THE COVID-19 EMERGENCY REQUIRED THE STATE TO ACT QUICKLY AND THE WAIVER PROCESS PROVIDED ADEQUATE POST-DEPRIVATION PROCESS?

*Suggested Answer:       Yes*

V.    MUST PLAINTIFFS' EQUAL PROTECTION CLAIMS BE DISMISSED WHERE PLAINTIFFS ARE NOT SIMILARLY SITUATED TO COMMERCIAL CONSTRUCTION CONTRACTORS AND ALL RESIDENTIAL CONSTRUCTION CONTRACTORS WERE TREATED THE SAME?

*Suggested Answer:  Yes*

## ARGUMENT

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "Though a complaint 'does not need

4

detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do.'" *DelRio–Mocci v. Connolly Prop., Inc.,* 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly,* 550 U.S. at 555)). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir. 2013)  (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories,* 707 F.3d 223, 231 n. 14 (3d Cir. 2013)   (internal citations and quotation marks omitted).

Under this standard, and for the reasons explained below, every Count of Plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(6).

## I.      Plaintiffs' Claims Must Be Dismissed Because Identical Claims Are Pending Between the Identical Parties in Another Court

The claims presented in Plaintiffs' Complaint are identical to claims pending between the same parties in the Commonwealth Court. *See Defendants' Motion to Dismiss,* Exhibit A.  In bringing their claims, Plaintiffs had a choice of forum and selected the Commonwealth Court to litigate their claims.  Now, they seek to litigate the same claims on two fronts. This is improper, and Third Circuit case law favors dismissal.

"[A]s a general principle, duplicative litigation … is to be avoided."  *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 817 (1976).   The Third Circuit has recognized that every court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for the litigants."  *Remington Rand Corp. v. Business Systems, Inc.,* 850 F.2d 1274, 1275-76 (3d Cir. 1987).   "[A] federal suit

may be dismissed for 'reasons of judicial administration … whenever it is duplicative of a parallel action already pending in another court.' " *Just Enterprises, Inc. v. O'Malley & Langan, P.C.,* 560 F.Supp.2d 345, 348 (M.D. Pa. 2008) (citing *Chrysler Credit Corp. v. Marino,* 63 F.3d 574, 578 (7th Cir. 1995)).   A claim is duplicative if it involves the same claims, same parties, and same available relief.  *Id.*  Such is the case here.

Both actions are brought by Builders Association of Metropolitan Pittsburgh, Londonbury Homes, Inc., Sparkle Construction-SPP, Inc., Magnotti & Sons, Inc. DBA the Fireplace and Patioplace, T.J. Bush Enterprises, Inc., and Rossman/Hensley, Inc. against Governor Wolf and Secretary Levine.  Both actions allege violations of procedural due process and equal protection.  And both seek the same declaratory and injunctive relief.  Thus, the two actions are identical and should not both be permitted to proceed.  As the Commonwealth Court action was filed first, this action should now be dismissed.  *See Remington Rand.,* 830 F.2d. at 1276 (dismissing a second suit that involved "precisely the same parties" as the first action that also included an "identity of issues.").

## II.   Plaintiffs Cannot Prove That There Is an "Actual Controversy" Warranting Declaratory or Injunctive Relief Because They Seek Relief as to Past Events

Plaintiffs' Complaint alleges violations of their procedural due process and equal protection rights.  Plaintiffs seek declaratory and injunctive relief.  The facts underlying these claims no longer present an actual controversy.

With respect to procedural due process, Plaintiffs take issue with the waiver process set up to allow non-life-sustaining businesses to request permission to operate during the pandemic, alleging it failed to safeguard Plaintiffs' due process rights.  *Doc. 1*, ¶¶ 31-49.   Plaintiffs acknowledge, however, that the submission of waiver requests ended on April 3, 2020. *Doc. 1,* ¶ 38.   This Court recently held that "[the waiver] issue is not appropriate for review in a

6

declaratory proceeding.  Declaratory relief is simply not an appropriate avenue to challenge violations of rights that have already occurred." *County of Butler v. Wolf,* No. 2:20-cv-677, 2020 WL 2769105,*3 (W.D. Pa. May 28, 2020).

The equal protection claims allege that residential construction contractors have been treated differently than commercial construction contractors. Plaintiffs argue commercial construction contractors are permitted to have more workers on a jobsite than residential construction contractors. *Doc. 1,* ¶¶54-62.  But this argument ignores the guidance provided by the Pennsylvania Department of Community and Economic Development ("DCED").   The guidance provided by DCED for both residential and commercial construction states "FOR COUNTIES IN THE GREEN PHASE OF REOPENING: The above limits to the number of persons on a job site no longer apply."  Guidance for Businesses in the Construction Industry Permitted to Operate During the COVID-19 Disaster Emergency, Website of the Governor, https://www.governor.pa.gov/covid-19/construction-industry-guidance/  (last  visited  7/12/20).[9] As of July 3, 2020, all Pennsylvania counties are in the "green" phase and the number of persons on a residential construction job site is no longer limited.  Accordingly, no actual controversy exists.

It is unknown whether the facts as pled will exist again, considering the unprecedented nature of the pandemic, and the Defendants' need to tailor the ongoing response to the changing threat presented by the pandemic. Thus, a declaratory judgment on this record amounts to nothing more than either an adjudication of past conduct or an advisory opinion on hypothetical

---

[9]    Federal Rule of Evidence 201 allows the court to take judicial notice of "a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."   As this information is publically available on the website of the Department of Community and Economic Development it cannot be disputed.

future facts.  Neither is proper.  *See Corliss v. Obrien,* 200 F.App'x 80, 84-85 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct.").  *See also, Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990) (declaratory judgment is not a vehicle to obtain "an opinion advising what the law would be upon a hypothetical state of facts.").  Accordingly, because a declaratory judgment must be "based on a real and immediate injury," and because the harms alleged by Plaintiffs have been rendered moot by the closure of the waiver process and the transition to the "green" phase, Plaintiffs' request for a declaratory and injunctive relief should be dismissed.

## III.    The Governor's Orders Were a Proper Exercise of the Commonwealth's Police Power

As a threshold matter, the Pennsylvania Supreme Court has made it abundantly clear that the Governor's emergency declaration and business closure order were properly within the bounds of his statutory authority.  *Friends of Danny DeVito,* 227 A.3d. at 888-90.

The authority of the states when exercising their police powers is broad and, indeed, "one of the least limitable of the powers of government." *District of Columbia v. Brooke*, 214 U.S. 138, 149 (1909). The protection of the public health, safety, and welfare falls within the traditional scope of a State's police powers. *Hillsborough Cty. v. Automated Med. Laboratories, Inc.*, 471 U.S 707, 719 (1985).

The Pennsylvania Supreme Court determined that state law grants the Governor "broad emergency management powers" when responding to a "disaster," including the power to temporarily close certain businesses. *Friends of Danny DeVito*, 227 A.3d. at 885.  Plaintiffs' request that this Court overrule Pennsylvania's highest court's interpretation of the state's own laws is wholly improper. As the Pennsylvania Supreme Court addressed and resolved those issues on the basis of state law, this Court is bound by that resolution. *See Washington State*

*Department of Licensing v. Cougar Den, Inc.*, 139 S. Ct. 1000, 1010 (2019) (citing *Johnson v. United States*, 559 U.S. 133, 138 (2010)).

Regarding the Commonwealth's inherent police power under the Tenth Amendment,[10] the United States Supreme Court enunciated the framework by which individual constitutional rights are balanced with a state's need to prevent the spread of disease more than a century ago in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). At issue in *Jacobson* was the constitutionality of a Massachusetts law requiring all citizens to be vaccinated for smallpox, which was enacted after an outbreak. *Jacobson*, 197 U.S. at 12. Much like Plaintiffs in the present case, the defendant in *Jacobson* argued that "his liberty [was] invaded" by the mandatory vaccination law, which he believed was "unreasonable, arbitrary, and oppressive." *Id.* at 26.

In response, the High Court emphasized that "the liberty secured by the Constitution ... does not import an absolute right in each person to be, at all times and in all circumstances, wholly free from restraint." *Id.* Under such an absolutist position, liberty itself would be extinguished:

> There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members. ... Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others.

*Jacobson*, 197 U.S. at 26. Legal commentators have recognized the Court's central point: "[u]nbridled individual liberty eventually clashes with the liberty interests of others, and without some legal constraints, '[r]eal liberty for all could not exist.'" Thomas Wm. Mayo, Wendi

---

[10]     The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the states respectively, or to the people." U.S. Const. Amend. X.

9

Campbell Rogaliner, and Elicia Grilley Green, "'To Shield Thee From Diseases of the World': The Past, Present, and Possible Future of Immunization Policy," 13 J. Health & Life Sci. L. 3, 9 (Feb. 2020) (quoting *Jacobson*, 197 U.S. at 26).

In striking the proper balance, police powers can be used whenever reasonably required for the safety of the public under the circumstances. *Jacobson*, 197 U.S. at 28; *see also Lawton v. Steele*, 152 U.S. 133, 137 (1894) (a state may exercise its police power when (1) the interests of the public require government interference, and (2) the means used are reasonably necessary to accomplish that purpose).

As the Pennsylvania Supreme Court found, the Defendants "utilized a recognized tool, business closures, to enforce social distancing to mitigate and suppress the continued spread of COVID-19." *Friends of Danny DeVito*, 227 A.3d at 891.  The Middle District of Pennsylvania recently reached the same conclusion in the matter of *Benner v. Wolf,* No. 1:20-cv-775, 2020 WL 2564920 (M.D. Pa., May 21, 2020).  Chief Judge Jones stated, "government interference was required to stem the tide of the COVID-19 public health crisis," and there was no support for the *Benner* Plaintiffs' argument "that the Orders were not necessary to slow the spread of COVID-19, nor that they were an unreasonable reaction to the global pandemic."  *Benner,* 2020 WL 2564920 at *7.  Indeed, nearly every state responded in the same way, ordering all or certain non-essential businesses to close physical locations in order to enforce social distancing.[11] *See Jacobson,* 197 U.S. at 31 (looking to other states and countries in determining that vaccination law was a reasonably necessary means of protecting public health and safety). So have the courts, and for the same reason.

---

[11]    "State Data and Policy Actions to Address Coronavirus," Kaiser Family Foundation, https://www.kff.org/health-costs/issue-brief/state-data-and-policy-actions-to-address-coronavirus/ (last visited 5/1/20).

Plaintiffs cannot show that the Business Closure Orders were an unreasonable exercise of the Commonwealth's police powers, much less that their rights have been violated.  Accordingly, their claims should be dismissed.

**IV.    Plaintiffs' Procedural Due Process Claims Must be Dismissed Because the COVID-19 Emergency Required the State to Act Quickly and the Waiver Process Provides Adequate Post-Deprivation Process**

"After issuing the Business Closure Order, the Governor instituted a 'waiver' process by which 'non-life-sustaining' businesses could submit an application to [DCED] requesting permission to continue operations during the pandemic."    *Benner,* 2020 WL 2564920 at *1. Plaintiffs aver this process does not constitute adequate post-deprivation due process.  *Doc. 1* at 5.    A procedural due process claim encompasses two inquiries: whether a life, liberty, or property interest entitled to due process protection is at stake; and, if so, what procedures constitute "due process of law" in the situation at hand.  Plaintiffs' claimed interest in pursuing their respective business activities unimpeded is not absolute. *Cf. Jacobson*, 197 U.S. at 26 ("persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state").

Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar,* 520 U.S. 924, 930 (1997). To the contrary, "due process is flexible and calls for such procedural protections as the particular situation demands. ... [N]ot all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). "[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert*, 520 U.S. at 930.

11

The Middle District of Pennsylvania recently addressed a similar claim and held that, while, perhaps, not perfect, the waiver process was "an adequate summary procedure by which business owners may contest their placement on the non-life sustaining list." *Benner,* 2020 WL 2564920 at *5. The Court noted that "requiring more detailed procedures could very well overwhelm an already taxed system." *Id.* at *14.

The Pennsylvania Supreme Court reached the same conclusion. In *Friends of Danny DeVito,* Pennsylvania's High Court concluded that "the waiver process provide[d] sufficient due process under the circumstances presented here." *Friends of Danny DeVito,* 227 A.3d at 898. This was so, according to that Court, because "[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action. Indeed, deprivation of property to protect the public health and safety is '[o]ne of the oldest examples' of permissible summary action." *Id.* at 899 (quoting *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 300-01 (1981)).

Plaintiffs' focus on the alleged unfairness and arbitrariness of the waiver process here is both wrong and beside the point. It is wrong because the Governor's determinations as to which physical locations must close in order to protect lives was based on well-established and clear NAICS classifications.[12] *Id*. It is beside the point because Plaintiffs merely disagree as a matter of public policy with the Governor's classification of them as non-life-sustaining.

Moreover, only Plaintiffs Sparkle Construction-SPP, Inc. and T.J. Bush Enterprises, Inc. requested waivers. *Doc. 1,* ¶40. Builders Association of Metropolitan Pittsburgh, Londonbury

---

[12]     As explained in Section V.A. of this Brief, *infra,* NAICS refers to the North American Industry Classification System, a code developed by the Office of Management and Budget and utilized by the U.S. Census Bureau to group similarly situated entities together for classification purposes.

Homes, Magnotti & Sons, Inc. d/b/a The Fireplace and Patioplace, and Rossman/Hensley, Inc. do not aver that they availed themselves of the waiver process. *See Doc. 1.* Accordingly, they lack standing to challenge the adequacy of the procedure. *Friends of Danny DeVito,* 227 A.3d at n.17 (citing *Alvin v. Suzuki*, 227 F.3d 107, 116-19 (3d Cir. 2000) (holding that appellant could not state a procedural due process claim where he failed to avail himself of an available grievance procedure and that alleged futility did not excuse his failure to do so)).

Because the waiver process provided Plaintiffs with adequate post-deprivation due process, their procedural due process claim must be dismissed.

**V.      Plaintiffs Cannot Establish an Equal Protection Violation Because They Are Not Similarly Situated to Commercial Construction Contractors and All Residential Construction Contractors Were Treated the Same**

Plaintiffs, who are all residential construction contractors, allege they were treated differently than commercial construction contractors. *Doc. 1,* ¶¶51-67.    The United States Constitution does not require state officials to treat all entities "alike where differentiation is necessary to avoid an imminent threat" to health and safety. *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (1977); *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489 (1955) ("Evils in the same field may be of different dimensions and proportions, requiring different remedies").

A.      <u>As residential construction contractors, Plaintiffs are not similarly situated to commercial construction contractors</u>

Plaintiffs aver they are similarly situated to commercial construction contractors only at a very general level by stating "[r]esidential and commercial contractors are similar businesses engaged in the same type of work." *Doc. 1,* ¶59.   In compiling the list of businesses to be categorized as life-sustaining v. non-life-sustaining, "the Governor used the North American Industry Classification System ('NAICS'), a code developed by the Office of Management and

13

Budget and utilized by the U.S. Census Bureau to group similarly situated entities together for classification purposes, to serve as the basis for an initial list of business sectors." *Friends of Danny DeVito,* 227 A.3d at 879.   The NAICS distinguishes between residential building construction and nonresidential business construction, separating them into distinct industry groups. *Doc. 1-3* at 2.  Because the two are classified as distinct industry groups they are not similarly situated.

Plaintiffs are all residential construction contractors.  They concede that all residential construction contractors have been treated the same. *Doc. 1,* ¶47 ("By issuing the identical form Clarification to every residential contractor waiver request, the Commonwealth fails to consider the specific circumstances of the requesting party").  Petitioners have not alleged that they were treated differently than any similarly situated businesses, i.e., residential construction contractors—in fact, they concede just the opposite.

Plaintiffs' argument is nothing more than a public policy disagreement with the Defendants' determination as to which physical business locations would remain open and which would be temporarily closed.  Plaintiffs implicitly argue that if they had been empowered by law to make these life and death decisions, they would have responded to this global crisis differently. This policy matter is not for Plaintiffs to decide.

Likewise, the Court need not trouble itself with evaluating the wisdom of executive policy decisions. The Pennsylvania Supreme Court correctly recognized, "[i]t is not for this Court, but rather for the Governor pursuant to the powers conferred upon him by the Emergency Code, to make determinations as to what businesses, or types of businesses, are properly placed in either category." *Friends of Danny DeVito,* 227 A.3d at 903.  "[T]he Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise

14

economic or social policy. ... [I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 27 (1989) (internal quotation marks and citations omitted). *See also Whitmore v. Arkansas*, 495 U.S. 149, 161 (1990) ("It is not for this Court to employ untethered notions of what might be good public policy to expand our jurisdiction in an appealing case"); *Williamson*, 348 U.S. at 488 ("The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.").

Here, during an unprecedented and rapidly evolving global health disaster, deference to the public policy decisions of Commonwealth officials is most appropriate. The Business Closure Orders balance the economic interests of the Commonwealth against the health and lives of 12.8 million Pennsylvanians. Temporarily closing certain physical locations in order to protect lives is certainly not invidious or wholly arbitrary. The health and survival of those residents is the most compelling of state interests. And the classifications and distinctions made to protect our citizenry are absolutely essential—not just reasonably related—to achieving that most compelling of state interests. Because the Business Closure Orders do not violate the Equal Protection Clause, Plaintiffs' equal protection claim must be dismissed.

B.  Plaintiffs' equal protection claim is moot because all counties are in the "green" phase in which the same number of workers are permitted on all construction sites

Plaintiffs argue that their right to equal protection has been violated because commercial construction contractors are permitted to have more workers on a jobsite. *Doc. 1,* ¶¶54-62. This argument ignores the guidance provided by DCED.  That guidance for both residential and commercial construction states, "FOR COUNTIES IN THE GREEN PHASE OF REOPENING:

The above limits to the number of persons on a job site no longer apply." Guidance for Businesses in the Construction Industry Permitted to Operate During the COVID-19 Disaster Emergency, Website of the Governor, https://www.governor.pa.gov/covid-19/construction-industry-guidance/ (last visited 7/12/20).  As of July 3, 2020, all Pennsylvania counties have entered the "green" phase.  In the "green" phase, the number of persons on a residential construction job site is no longer limited.  Accordingly, Plaintiffs'' equal protection argument is moot and should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims for violations of procedural due process and equal protection fail as a matter of law; therefore, Plaintiffs are not entitled to declaratory or injunctive relief, and their Complaint must be dismissed.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:     */s/ Karen M. Romano*

KAREN M. ROMANO
Chief Deputy Attorney General
Chief, Litigation Section
Pa. Bar # 88848

Office of Attorney General
Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA  17120
Phone: (717) 787-2717
kromano@attorneygeneral.gov

DATE:  July 14, 2020

16

**CERTIFICATE OF SERVICE**

I, Karen M. Romano, Chief Deputy Attorney General, do hereby certify that I have this day served the foregoing **Brief in Support of Defendants' Motion to Dismiss**, via ECF, on the following:

Kristen L. Moritz, Esquire
GESK MORITZ LLC
kmoritz@gesklaw.com
*Counsel for Plaintiffs*

/s/ Karen M. Romano

_____

KAREN M. ROMANO
Chief Deputy Attorney General

DATE:  July 14, 2020