IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BUILDERS ASSOCIATION OF | : | |
| METROPOLITAN PITTSBURGH, | : | |
| LONDONBURY HOMES, INC., SPARKLE | : | |
| CONSTRUCTION-SPP, INC., MAGNOTTI | : | Civil Action No. 2:20-cv-00870-RJC |
| & SONS, INC. DBA THE FIREPLACE AND | : | |
| PATIOPLACE, TJ BUSH ENTERPRISES, | : | |
| INC., AND ROSSMAN/HENSLEY, INC., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | **BRIEF IN OPPOSITION TO MOTION TO** |
| | : | **DISMISS** |
| TOM WOLF, GOVERNOR AND RACHEL | : | |
| LEVINE, SECRETARY OF | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| HEALTH, | : | |
| | | **JURY TRIAL DEMANDED** |
| Defendants. | | |

## BRIEF IN OPPOSITION TO MOTION TO DISMISS

AND NOW, come the Plaintiffs, BUILDERS ASSOCIATION OF METROPOLITAN PITTSBURGH, LONDONBURY HOMES, INC., SPARKLE CONSTRUCTION-SPP, INC., MAGNOTTI & SONS, INC. DBA THE FIREPLACE AND PATIOPLACE, TJ BUSH ENTERPRISES, INC., AND ROSSMAN/HENSLEY, INC., collectively "Plaintiffs") by and through its attorneys, Gesk Moritz, LLC, and files this BRIEF IN OPPOSITION TO MOTION TO DISMISS, as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

On Thursday, March 19, 2020, Governor Wolf issued an order compelling the closure of the physical operations of all businesses that were deemed non-life sustaining, and on the same day, Secretary Levine issued a similar order. The Governor further determined which Pennsylvania businesses are "life sustaining" and which are "non-life sustaining". The Orders cite The Emergency Management Services Code, Sections 532(a) and 1404(a) of the Administrative Code, and the Disease Prevention and Control Law. The Orders cite the

1

following legal authority: (1) The Emergency Management Services Code ("EMSC"), 35 Pa.C.S. § 7101, *et seq*.; (2) Sections 532(a) and 1404(a) of the Administrative Code; and (3) the Disease Prevention and Control Law ("DPCL"), 35 P.S. § 521.1, *et seq.*  While physical construction activities had been permitted to resume across the Commonwealth, operations are still limited and/or constrained by restrictions set forth as modifications to the Orders, which remain in place.

Plaintiff, Builders Association of Metropolitan Pittsburgh ("BAMP'), is a Pennsylvania non-profit trade association BAMP's membership is comprised of businesses and individuals from Allegheny, Beaver, Butler, Greene, Westmoreland, and Washington counties. As an organization, BAMP is comprised of homebuilders, light commercial builders, suppliers, subcontractors, lenders, manufacturers, utilities, realtors, and architects.  BAMP currently has more than 600 members in Allegheny, Beaver, Butler, Greene, Washington, and Westmoreland counties of Pennsylvania.    BAMP brings the instant Complaint in a representative capacity, on behalf of its members.   Plaintiffs Londonbury Homes, Inc. ("Londonbury"), Sparkle Construction-SPP, Inc. ("Sparkle"), Magnotti & Son, Inc., DBA The Fireplace and Patioplace ("Magnotti"), TJ Bush Enterprises, Inc. ("TJ Bush"), and Rossman/Hensley, Inc. ("Rossman Hensley") are Pennsylvania companies engaged in the business of residential construction.

Governor Wolf and Secretary Levine have divided the Commonwealth into six (6) regions for the purpose of analyzing the spread of coronavirus.  BAMP's membership is comprised of businesses located in counties that are within the Southwest region defined by Governor Wolf and Secretary Levine. Other than Beaver County, Governor Wolf announced that the Southwest Region was being moved to the "Yellow" phase of reopening on May 18,

2020. The "Yellow Phase" does not alter the Order and Guidance for the Construction Industry restricting workers on residential construction sites.

BAMP and the other Plaintiffs have suffered, and will continue to suffer, economic harm as a result of the Orders.  As such, Plaintiffs initiated the instant action alleging that the Orders violate the due process and equal protection rights.

## LEGAL STANDARD

A Motion to Dismiss pursuant to Rule 12(b)(6) should not be granted when a Complaint contains sufficient factual matter, accepted as true, "to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2008)).

## ARGUMENT

In their Motion to Dismiss, Defendants argue that Plaintiffs' Complaint should be dismissed.  Defendants set forth five separate arguments.  Each argument fails as set forth below.

### A.    PLAINTIFFS' CLAIMS ARE NOT IDENTICAL TO A PENDING ACTION IN ANOTHER COURT

Defendants argue that this action must be dismissed as an identical claim is pending in the Commonwealth Court of Pennsylvania.  However, as demonstrated Exhibit 1 to Defendants' Motion to Dismiss, the Commonwealth Court action alleges violations of certain provisions of the Pennsylvania Constitution.  Such claims are not set forth in the instant litigation.  As such, the claims of each action are not identical.

**B.    PLAINTIFFS' EQUAL PROTECTION CLAIM IS LITIGATION WHICH IS CAPABLE OF REPETITION YET EVADING REVIEW**

Defendants argue that Plaintiffs' equal protection claim is moot, as the DCED guidance does not limit the number of residential workers for counties in the green phase and all Pennsylvania counties entered the green phase as of July 3, 2020.  However, such argument ignores the fact that Defendants have repeatedly stated that they may move certain counties back into the yellow or red phases.  Moreover, the Orders challenged remain in effect in their totality.

In <u>Roe v. Wade</u>, 93 S. Ct. 705, 708 (1973), the Supreme Court held that "[l]itigation involving pregnancy, which is 'capable of repetition, yet evading review,' is an exception to the usual federal rule that an actual controversy must exist at review stages and not simply when the action is initiated." Further, the Court recognized that "pregnancy was a significant fact in the litigation, and that the normal 266-day human gestation period is so short that the pregnancy would come to term before the usual appellate process is complete." <u>Id.</u> at 714. If a pregnancy coming to term rendered a case moot, pregnancy litigation seldom would survive much beyond the trial stage, and so the Supreme Court wrote "our law should not be that rigid" and determined that "pregnancy provides a classic justification for a conclusion of nonmootness." <u>Id.</u>

While the usual rule for standing is that an actual controversy must exist at all stages of review, not simply the date when the action was initiated, the Supreme Court held in <u>Roe</u> that because pregnancy is a temporary condition, and due to the pace of litigation, such claims could be "capable of repetition, yet evading review," if such a rigid standard requiring the controversy to be maintained throughout litigation was applied, and thus held that while the plaintiff in that case was no longer pregnant at the time of review by the court, her claim

was not moot.  Here, because the transition to "Green Phase" may also be fleeting as the coronavirus continues to evolve and spread and the Governor has said many times he will move counties back to yellow or red as needed, were the court to determine that Plaintiffs' claim was moot, it would be similarly capable of repetition, and evading review.  The status of a given county in a given phase of Defendants' reopening plan, like pregnancy, is a temporary condition and should not be subject to the same requirements of the maintenance of actual controversy at all stages throughout litigation.

### C. THE COMMONWEALTH'S EXERCISE OF ITS POLICE POWERS DOES NOT PERMIT A VIOLATION OF THE PLAINTIFFS' PROCEDURAL DUE PROCESS AND/OR EQUAL PROTECTION RIGHTS

Defendants argue that Plaintiffs' Complaint must be dismissed as Defendants Orders constitute a proper exercise of the Commonwealth's police powers.  This argument fails, however, as Defendants have misconstrued Plaintiffs' arguments.  Plaintiffs Complaint does not challenge Defendants authority for issuing the subject orders.  Rather, Plaintiffs argue that upon issuing the Orders, Defendants are required to provide procedural due process and apply the Orders equally to those similarly situated.  As such, the police power does not provide a basis for dismissal of Plaintiffs' claims.

### D. PLAINTIFFS' COMPLAINT ALLEGES THAT THE WAIVER PROCESS HAS NOT BEEN IMPLEMENTED WITH RESPECT TO RESIDENTIAL CONTRACTORS

In conjunction with the Orders, the Governor established a waiver process administered by the Department of Community of Economic Development ("DCED") by which a business deemed "non-life sustaining" could advocate for an exemption to permit it to open.  In determining which businesses were "Life Sustaining" DCED announced it would use an advisory issued by the U.S. Department of Homeland Security's Cybersecurity and

Infrastructure Security Agency entitled "Identifying Critical Infrastructure During COVID-19" ("CSIA Advisory").

On March 28, 2020 the CSIA Advisory was amended to designate construction of single-family and multifamily housing as an "Essential Infrastructure Business" (Version 2.0) Under both the "Public Works and Infrastructure Support Services" and "Residential/Facilities and Services" section of the guidance.  In subsequent communications to the business community, DCED announced that "[i]n analyzing requests for exemptions, DCED utilized CISA Advisory Version 1.1, originally issued on March 19, 2020, as amended on March 23, 2020.  Version 1.1 of the CISA advisory is available here…Subsequent changes to the CISA guidance were not adopted by the commonwealth and were not applied when analyzing requests for exemption."

The Governor closed waiver requests on April 3, 2020.  Reportedly, over 40,000 waiver requests were received by the Commonwealth.  Sparkle, TJ Bush, and other BAMP members applied for waivers before April 3, 2020.  In response to its waiver requests, Plaintiff TJ Bush received correspondence denying its requests without explanation.  In response to the waiver requests, the Governor and Secretary provided a form "Clarification for Residential Construction" ("Clarification").  The Clarification was provided to Sparkle, and also based upon information and belief, an identical Clarification was provided in response to all waivers sought by other BAMP members.  The Clarification restates the Governor's previously provided guidance concerning permissible emergency repairs and work on projects that have already been issued a final occupancy permit.  Importantly, the Clarification further states that no new construction or non-emergency rehabilitation or remodeling may be performed.   The Clarification further provides, *inter alia,* "[i]f you

6

previously received a notification from ra-dcexemption@pa.gov informing you that your request for an exemption was denied, granted, or that no exemption was required, please note that this notification replaces that previous guidance." By issuing the identical form Clarification to every residential contractor waiver request, the Commonwealth fails to consider the specific circumstances of the requesting party. The Commonwealth further fails to consider the mitigation proposal of each requesting party. Effectively, there is no waiver process for residential contractors and associated member businesses. This standardized approach and failure to consider the applicant's unique situation and proposal constitutes a denial of the applicant's due process rights under the United States Constitution.

Defendant argues that such an argument was already decided in Friends of Danny DeVito v. Wolf, 227 A.3d 872, 899-900 (Pa. 2020). In that case, the Plaintiffs argued that the Commonwealth's waiver process deprived them of the required procedural due process. The Court found that while the circumstances of Covid-19 did not require pre-deprivation due process, Pennsylvania businesses were nonetheless entitled to post-deprivation due process. The Court further held that an evidentiary hearing was not required to provide adequate due process. However, the Friends of Danny DeVito, in no way held or implied that the Commonwealth need not provide Pennsylvania business with *any* amount of consideration and/or evaluation in the waiver process.

In this case, that is precisely what Plaintiffs have alleged. By issuing the same form letter to every residential contractor, regardless of any consideration of the specific consequences of a given waiver request, entirely deprives the Plaintiffs of any post-deprivation due process. Due process requires that a person be given an opportunity to be

heard.  See e.g., Martin v. Department of Environmental Resources, 120 Pa. Commonwealth Ct. 263, 548 A.2d 672 (1988).

This Court applies a three-part balancing test in order to determine the amount of process due. Id. at 898. The three factors considered in this balancing test are: "(1) the private interest affected by the governmental action; (2) the risk of an erroneous deprivation together with the value of additional or substitute safeguards; and (3) the state interest involved, including the administrative burden the additional or substitute procedural requirements would impose on the state." Id.

While Friends of Danny DeVito labeled a waiver process as providing adequate post-deprivation due process rights, Defendants' waiver system as applied to residential contractors, essentially does not exist.  The same response letter being issued to every single person reveals there was no consideration or evaluation of the deprivation as set forth in the second of the three factors to be considered.  As such, Friends of Danny DeVito is not dispositive on this issue.

Defendants further allege that the Complaint must be dismissed, as Plaintiff BAMP did not aver itself of the waiver process and therefore may not assert a due process claim. However, the Complaint avers that BAMP's members applied for a waiver, thus availing themselves of the waiver process.  BAMP thus has standing to assert a due process claim on behalf of its members.

Relying on United States Supreme Court precedents, the Pennsylvania Supreme Court, in Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269, 280-281 (1975), summarized the concept of standing:

> [A] person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has

8

no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be "aggrieved" to assert the common interest of all citizens in procuring obedience to the law.

In determining whether the interest asserted renders a litigant "aggrieved," the Court must ascertain whether the interest is "substantial," "direct," "immediate," and "not a remote consequence" of the challenged action. As Mr. Justice Roberts elaborated,

> [T]he requirement of a "substantial" interest simply means that the individual's interest must have substance—there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law.

Id., 464 Pa. at 195, 346 A.2d at 282. The additional requirement, that the interest be direct, simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains. Id. The remaining requirements, that the interest be "immediate," and "not a remote consequence" reflect a single concern. Id., at 464 Pa. at 197, 346 A.2d at 283.

As the representative of its members, an association may also have standing. American Booksellers Ass'n, Inc. v. Rendell, 481 A.2d 919, 928 (Pa. Super. Ct. 1984). To have such standing, an association "must allege that its members, or any one of them, are suffering immediate or threatened injury, resulting from the challenged action, sufficient to satisfy the Wm. Penn Parking Garage, Inc. standard." Id. As long as this is demonstrated, and the nature of the claim asserted and the relief sought do not "render the individual participation of each injured party indispensable to proper resolution of the issue, the association may be an appropriate representative of its members." Id. In this case, BAMP has made this exact allegation. Further, the circumstances of BAMP's due process claim and the relief sought, i.e.

invalidation of the Orders, does not require the participation of each individual BAMP member.

Further, BAMP, as a trade association, has previously been held to have standing in order to assert claims on behalf of one or more of its members.  See e.g., Builders Association of Metropolitan Pittsburgh v. Marshall Township Municipality, Pittsburgh Legal Journal, Volume 150, No. 5, page 41.

### E.    THE ORDERS TREAT CERTAIN CONTRACTORS DIFFERENTLY FROM OTHERS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION

The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly.  Laudenberger v. Port Authority of Allegheny County, 496 Pa. 52, 436 A.2d 147 (1981).  However, it does not require that all persons under all circumstances enjoy identical protection under the law. James v. SEPTA, 505 Pa. 137, 477 A.2d 1302 (1984). The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, Robson v. Penn Hills School District, 63 Pa. Commw. 250, 437 A.2d 1273 (1981), and does not require equal treatment of people having different needs.  Houtz v. Commonwealth, Department of Public Welfare, 42 Pa. Commw. 406, 401 A.2d 388 (1979).  The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, Heisler v. Thomas Colliery Co., 260 U.S. 245, 43 S. Ct. 83, 67 L. Ed. 237 (1922), provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. Commonwealth v. Parker White Metal Co., 512 Pa. 74, 515 A.2d 1358 (1986).  In

other words, a classification must rest upon some ground of difference which justifies the classification and have a fair and substantial relationship to the object of the legislation.  Id.

As of May 1, 2020, all businesses in the construction industry are permitted to maintain in-person operations so long as their activities strictly adhere to the "Guidance for Businesses in the Construction Industry Permitted to Operate During the COVID-19 Disaster Emergency" ("the Guidance").   The Guidance provides definitions as to which projects constitute residential and commercial construction.  The Guidance provides that residential construction projects may not permit more than four persons on the jobsite at any time inclusive of employees of both prime and subcontractors.  Further, the Guidance states that commercial construction projects may not permit more than four persons on job sites of 2,000 square feet or less.  One additional person is allowed for each additional 500 square feet of enclosed area over 2,000 square feet.

Following this issuance of the Guidance, the Commonwealth published a "Construction Guidance During COVID-19 FAQs" ("FAQ").   The FAQ applies to both residential and commercial contractors but sets forth different guidelines for each.  The FAQ clarifies that the worker limits do not apply to exterior work and that after erection of a dividing fire separation wall, the worker limit applies to each unit.   Further, the FAQ provides:

> If a residential construction project is over 2,000 square feet, can the same non-residential guidelines apply?
>
> No.  Residential projects must follow the residential guidelines, which state no more than four persons on the job site at the same time.

The stated purpose of the Orders is to combat the spread of Covid-19.  Residential and commercial contractors are similar businesses engaged in the same type of work.   A

commercial contractor and a residential contractor working on a project of the same size have the same ability to implement social distance between persons working on the job site. Stated otherwise, there is nothing specific to residential construction, as opposed to commercial construction, that makes it more difficult to implement social distancing between persons on a job site.  Only the size of an enclosed structure bears a relationship to the stated goal of Orders.  The ultimate use of the structure, commercial or residential, in no way impacts the transmission of the virus among those constructing the structure.  Under the Guidance, a commercial contractor building a 5,000 square foot structure would be permitted to have ten persons on the job site, while a residential contractor building a 5,000 square foot house would be permitted to have only four persons on the job site.

As such, under Applicable law, the Orders and Guidance related to the number of workers permitted to work within an enclosed unit violate the equal protection clauses of the United States Constitution.

## **CONCLUSION**

WHEREFORE, Plaintiffs, Builders Association of Metropolitan Pittsburgh, respectfully request that this Honorable Court deny Defendants, Tom Wolf's and Rachel Levine's Motion to Dismiss.

Date: August 4, 2020                    Respectfully submitted,

                                        */s/ Kristen L. Moritz*
                                        Kristen L. Moritz
                                        Pa. I.D.  No. 205800
                                        Gesk Moritz LLC
                                        14 East Main Street
                                        Carnegie, PA 15106
                                        kmoritz@gesklaw.com
                                        (412) 429-9100
                                        Counsel for Plaintiffs